IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RONALD E. WILLIAMS,             :
    Plaintiff                :
                             :
v.                               :     CIV. NO. AMD 04-1417
                             :
IRONWORKERS LOCAL NO. 16         :
PENSION FUND, et al.,            :
    Defendants               :
              ...o0o...

MEMORANDUM OPINION

Plaintiff Ronald E. Williams brought this action against defendants Ironworkers Local No. 16 Pension Fund (the "Fund") and its Board of Trustees pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et. seq.*, to challenge the denial of pension benefits. In an earlier opinion, I granted summary judgment for defendants on the ground that Williams's claim was barred by limitations. Upon Williams's appeal from that order, the Fourth Circuit reversed. *See* 2005 WL 1076133 (D.Md. April 21, 2005), *rev'd*, 2006 WL 1130903 (4th Cir., April 28, 2006). The parties have now renewed their cross-motions for summary judgment on the merits. The motions are fully briefed and no hearing is necessary. For the reason set forth within, plaintiff's motion for summary judgment shall be denied and defendants' motion shall be granted.

I.

Summary judgment is proper where the moving party demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A dispute is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A mere "scintilla of evidence" is not enough to frustrate a motion for summary judgment. Instead, the pleadings must demonstrate evidence in which the finder of fact could reasonably find for the party opposing judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Cross-motions for summary judgment "do not automatically empower the court to dispense with the determination whether questions of material fact exist." *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1983), *cert. denied*, 464 U.S. 805, 78 L. Ed. 2d 72, 104 S. Ct. 53. "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987). Both motions may be denied. *See Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983).

II.

There is no dispute, of course, that the Fund is subject to the prescriptions of ERISA. The Fund's existence predates the enactment of ERISA. Administration and management of the Fund is by contract with specialists, with the Board of Trustees setting policies and procedures. As might be imagined, the Trustees have amended the pension plan from time-to-time. The outcome of this case hinges on the proper interpretation and application of one of those amendments. Defendants argue that although contributions were made on behalf of

Williams over many years, he failed to vest or otherwise accrue an entitlement to benefits. Williams argues, to the contrary, that he is eligible for a pension, albeit a reduced pension, under a 1972, pre-ERISA, version of the pension plan.

At different times between 1969 and 1990, Williams worked for employers that made contributions to the Fund on his behalf. It is undisputed that he did not work for any qualifying employer between 1982 and 1989. Under the 1972 version of the pension plan, a participant's entitlement to a pension would vest after he or she earned seven years of credit and at least a partial benefit was payable when he or she reached retirement age. If a participant failed to work sufficient hours over a specified period to earn the requisite vesting credit, the participant would not vest in a benefit and all potential benefits are subject to forfeiture based on the relevant "break-in-service" rules.

Following the effective date of ERISA, the Fund made a change to the vesting schedule as mandated by ERISA. Importantly, Williams contends that he never received notice of the amendment until he applied for benefits in 1990. In any event, under the amendment, the graduated vesting schedule maintained by the Fund in the 1972 pension plan was rescinded; instead, vesting occurred only after ten years of service. *Id.* (This change was selected from one of two options offered by ERISA; the other option was a graduated vesting schedule ranging from 25% after five years to 100% after 15 years.)

Under the pension plan, "service credit" is used to calculate the benefit payable to a participant at retirement, while "vesting credit" is used to measure the point in time when the participant accrues a non-forfeitable right to a benefit at retirement. As mentioned above, a

participant loses all accrued service credits if he or she experiences a "permanent break in service" as defined by the Fund. Therefore, if a participant is not vested when a permanent break in service occurs, all vesting credits will be canceled and the participant is not entitled to a benefit.

At times during his many years of attempting to obtain benefits, *see generally* 2006 WL 1130903 (4th Cir., April 28, 2006), Williams has asserted that he is entitled to benefits under the post-ERISA versions of the pension plan. In the present case, however, Williams has abandoned any claim to benefits under the plan as amended; he asserts only that he is entitled to benefits under the 1972, pre–ERISA, version of the pension plan.

The Fund's records show that Williams earned seven years of vesting credit. (This includes two years of a "grace period," during which he avoided service-breaks without working the required hours, and two years where a service-break did not occur based on Williams's disability.) Thus, at first blush, Williams would appear to be entitled to a partial benefit under the 1972 version of the pension plan. The difficulty arises from the fact that, as mandated by ERISA, the Trustees changed the vesting schedule to ten years and, according to defendants, they did so before Williams had accrued sufficient vesting credit to gain an entitlement to benefits even under the pre-ERISA pension plan. Therefore, say defendants, Williams is not eligible for benefits under the pre-ERISA pension plan any more than he is entitled to benefits under the post-ERISA plan.

The gravamen of the parties' dispute is two-fold: (1) whether the amendment to the vesting schedule became effective, as mandated by ERISA, on January 1, 1976 (and as

reflected in the minutes of a special meeting on January 3, 1976, of the Board of Trustees), or only later, in November 1977, when the amendment to the vesting schedule was embodied in, and thus available to participants in, a formal, printed, restatement of the pension plan; and (2) whether Williams received notice of the Fund's amendment to the vesting schedule in time for him to adjust his work plans so as to secure a pension benefit. If the effective date is 1977, or, if Williams did not receive timely notice of the amendment to the vesting schedule, Williams seemingly would be eligible for pension benefits under the pre-ERISA plan's criteria, and in particular, its graduated vesting schedule.

I am constrained to reject Williams's claim. The first issue is: what is the effective date of the amendment to the vesting schedule? This determination is important because, if the effective date is January 1, 1976 (as intended by the Board of Trustees and as mandated by ERISA), because Williams did not then have *five years* of vesting credit, he was not eligible to make an election as to vesting.[*] On the other hand, if the amendment did not become effective until November 11, 1977, as Williams contends, then by that date, Williams had earned sufficient vesting credit (more than five years) to make him eligible to elect what, for him, has turned out to be a more favorable vesting schedule, i.e., vesting

---

[*]Pursuant to Pub. L. 99-514 §1113(e)(4)(A), if Williams had at least five years of vesting credit at the time the Trustees amended the vesting schedule, he had the right to elect a pension under the 1972, pre-ERISA, vesting schedule. Thus, although Williams did not have the seven years of vesting credit necessary to secure a non-forfeitable right to a partial benefit at the time the Trustees amended the vesting schedule at their January 1976 special meeting, because he eventually earned seven years of vesting credit, he could have elected, at retirement, a partial benefit. Thus, as discussed in text, because Williams had more than five years of vesting credit in November 1977, but not in January 1976, his entitlement to elect a partial benefit under the 1972, pre-ERISA, plan turns on the effective date of the amendment to the vesting schedule.

under the pre-ERISA pension plan (seven years, for a partial benefit) rather than vesting under the post-ERISA pension plan (ten years, resulting in 100% vesting).

Williams, citing cases such as *Smith v. National Credit Union Admin. Board*, 36 F.3d 1077 (11th Cir. 1994), among others, *and see Coleman v. Nationwide Life Ins. Co.,* 969 F.2d 54, 59 (4th Cir.1992), *cert. denied,* 506 U.S. 1081 (1993), contends that the Trustees' adoption of the change in the vesting schedule at the special meeting of January 3, 1976, as reflected in the minutes of that meeting (as amended in February 1976), was too "informal" to satisfy ERISA's

> emphatic preference for written agreements . . . . The statute requires that all ERISA plans be "established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1), and that the written instrument describe the formal procedures by which the plan can be amended, *id.* § 1102(b)(3). Based upon this statutory scheme, any modification to a plan must be implemented in conformity with the formal amendment procedures and must be in writing.

*Coleman*, 969 F.2d at 58-59 (citation omitted).

I am not persuaded to adopt Williams's description of the Trustees' amendment of the vesting schedule as fatally "informal." The record reflects that the action of the Board of Trustees at the January 1976 meeting fully complied with the amendment procedures spelled out in the Fund documents. Moreover, the change was appropriately recorded in the official minutes of the Board. There is no support for the argument that to avoid prohibited "informality," trustees of a pension fund must reprint and reissue the plan in its entirety to make effective a duly adopted plan amendment.

Williams's claim also founders on the second issue: whether he received timely notice

of the amendment to the vesting schedule. ERISA requires plan beneficiaries to receive notice of any material change in the terms of a covered benefit plan. *See* 29 U.S.C. §§ 1022(a), 1024(b). When plan administrators neglect to notify participants of material modifications, the remedy is to allow the plan participant the option of having his or her pension calculated under the criteria that were applicable prior to the change at issue. *Rodriguez v. MEBA Pension Trust*, 872 F.2d 69, 74-75 (4th Cir. 1989)(citations omitted).

Defendants argue that *Rodriguez* stands only for the proposition that participants must be provided with notice from a benefit plan with respect to "changes requiring their affirmative action," *id.* at 73, and that a participant is not harmed by a plan's mistake in failing to notify the participant of a change which required no action by the participant. I disagree with the suggestion that notice has no relevance here. The same interests are at stake for any pension fund participant who does not receive notice. Even on defendants' interpretation of *Rodriguez*, however, Williams needed to "take affirmative action" in response to the amendment to the vesting schedule: he had to earn ten years, not merely seven years, without a permanent service-break of vesting credit, to secure a pension. Thus, if he did not receive notice of the amendment, he was prejudiced insofar as he was without the knowledge he needed to make informed decisions as to how to secure his pension rights. ERISA's notice requirements were based on "an overriding fiduciary standard of fairness . . .because it [is] 'grossly unfair to hold an employee accountable for acts [or omissions] which disqualify [the participant] from benefits, if [he or she] had no knowledge of these acts.'" *Id.* at 74 (citing S. Rep. No. 127, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.

Code Cong. & Admin. News 4838, 4847)(second alteration added).

Defendants also argue that the lack of specific documentation of Williams's receipt of notice after 30 years does not prove notice was not given. I agree. Nevertheless, defendants clearly have the burden to show that notice was afforded, as ERISA plainly puts the "duty of notification," *id.*, on the administrator of a covered benefit plan to provide notice.

Defendants have satisfied that burden here. Defendants point to their customary habit of providing plan documents to participants (which is evidenced by a declaration in the record), and to the fact that the 1977 restatement of the pension plan was timely under ERISA itself. *See* 29 U.S.C. § 1024(b)(1)(prescribing that plan modifications be provided to participants not later than 210 days after the end of plan year in which such modification is adopted). Finally, Williams himself, in a letter he wrote to the Fund in seeking benefits, admits that he had documents disclosing the amendment and, indeed, actual knowledge of, the amendment of the pension plan to a ten year vesting schedule. Thus, defendants have satisfied their burden to show that notice of the amendment was afforded to Williams at a time when he could have taken steps to secure his pension (by avoiding a break in service). This conclusion is true whether I apply an "abuse of discretion" standard of review, a *de novo* standard of review, or treat the issue as one properly determined by a "trial on the papers," *see Palm v. Wausau Benefits, Inc.*, 2007 WL 927617, *1 (D.Md., March 26, 2007) (citing *Neumann v. Prudential Ins. Co. of Am.,* 367 F.Supp.2d 969, 979 (E.D.Va.2005)). Accordingly, because the record reflects that Williams received notice of the amendment to

a ten year vesting schedule at a time when, if he had chosen to do so, he could have adjusted his work plans to secure a pension benefit, the Fund is not obliged to permit him to elect a pension under the pre-ERISA plan's requirements.

III.

For the reasons set forth, defendants' motion for summary judgment shall be granted and plaintiff's motion shall be denied.

Filed: May 3, 2007                                            /s/
                                                       Andre M. Davis
                                                       United States District Judge